**Electronically Filed
Intermediate Court of Appeals
CAAP-14-0000917
28-APR-2017
08:00 AM**

NO. CAAP-14-0000917

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee, v.
WHISTON KAWAINUE KAWAA, JR., Defendant-Appellant.

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CRIMINAL NO. 12-1-1573)

MEMORANDUM OPINION
(By:  Nakamura, Chief Judge, and Reifurth and Ginoza, JJ.)

Plaintiff-Appellee State of Hawai'i (State) charged Defendant-Appellant Whiston Kawainue Kawaa, Jr., (Kawaa) with being a felon in possession of a firearm and place to keep pistol or revolver.  During trial, the Circuit Court of the First Circuit (Circuit Court),[1] in response to a motion by Kawaa, declared a mistrial.  After the Circuit Court set the case for retrial, Kawaa moved to dismiss the case with prejudice on double jeopardy grounds.  The Circuit Court denied the motion and filed its "Order Denying Defendant's Motion to Dismiss with Prejudice" (Order Denying Dismissal).

Kawaa appeals from the Order Denying Dismissal.  On appeal, Kawaa contends that the Circuit Court erred in denying his motion to dismiss.  We affirm.

---

[1] The Honorable Karen S.S. Ahn presided.

BACKGROUND

I.

The charges against Kawaa stemmed from a shooting incident in the early morning hours at Yokohama Bay Beach Park. There was an argument or altercation in the parking lot that resulted in multiple gunshots being fired. Kelii Mitchell (Mitchell), who was not involved in the argument, was shot in the back of the leg in the area of his left knee.

According to police reports, prior to being shot, Mitchell saw a person holding a small silver handgun and shooting at a truck that was fleeing the area. As Mitchell was walking away from the gunshots, he heard two more gunshots and instantly felt a severe pain in the back of his leg. He fell to the ground and realized he had been shot. Mitchell did not actually see who shot him. While at the hospital, Mitchell provided a physical description of the person he saw shooting the gun, and Mitchell told the police he could identify the shooter if he saw him. The police showed Mitchell a six-person photographic lineup that included Kawaa's picture, and Mitchell informed the police that the photograph of Kawaa "resembles" the person he saw holding or shooting the gun. Mitchell told the police that he "[chose] not to prosecute," but would be willing to testify as a witness.

Tyrell Silva (Silva), Mitchell's cousin, informed the police that while hanging out at Yokohama Bay Beach Park, she heard a commotion and then gunshots. From a distance of 15 to 20 feet, she saw a heavyset male who was wearing a gray shirt and a gold chain shooting a small handgun in the direction of a crowd of people and also into the air. She then saw Mitchell on the ground, holding his leg and screaming that he had been shot. Silva called the police. The person Silva saw shooting the gun came up to Mitchell and said "oh, my God, oh, my God," and Silva said, "fuck you, you shot him." When the police arrived, Silva pointed out a 2010 Dodge Charger, which the person shooting the gun had entered, that was being driven away from the scene. The police stopped the Charger, which contained six occupants,

including Kawaa. Kawaa was sitting in the front passenger seat and matched Silva's description of the person she saw shooting the gun -- a heavyset male, wearing a gray shirt and gold chain. Silva was taken to the Charger and identified Kawaa as the person she saw shooting the gun. The police recovered a small handgun from under the front passenger seat that Kawaa had been occupying.

K.K., one of the back-seat passengers in the Charger, later told the police that Kawaa had been shooting the gun. T.K., the driver of the Charger, after initially denying any knowledge of a gun, subsequently informed the police that K.K. had told him that K.K. was putting a gun under the front passenger seat.

II.

On the day the trial began, the Circuit Court apparently granted Kawaa's oral motion in limine to exclude any evidence that Mitchell had been shot in the knee by Kawaa during the incident at Yokohama Bay Beach Park. Kawaa did not order the transcript concerning this apparent ruling, and therefore, the details of the discussion surrounding this ruling and the precise ruling itself are not part of the record on appeal.

At trial, on direct examination by the Deputy Prosecuting Attorney (DPA), Mitchell testified that he heard gunshots, and when he turned towards the sound, he saw Kawaa firing a gun. Mitchell identified Kawaa in open court as the person he saw shooting the gun. Mitchell stated that as a truck sped off, Kawaa fired a couple more rounds, at which point Mitchell fell to the ground. Mitchell testified that Kawaa came over to him, that Kawaa had the gun in his hand, and that Kawaa was waiving his hand "telling me for get up."

When asked by the DPA what happened after that, Mitchell stated that "my cousin them came; she tied a tourniquet around my leg." Kawaa objected and moved to strike the answer. The Circuit Court struck the answer and instructed the jury to disregard it. Kawaa moved for a mistrial, and at a bench

3

conference, Kawaa's counsel stated that Mitchell's answer violated the Circuit Court's in limine ruling. During the bench conference, the DPA opposed the grating of a mistrial, noted that the Circuit Court had stricken the answer, and stated that he had "advise[d] the witness not to testify to being shot in the knee." The Circuit Court denied Kawaa's mistrial motion, and after the bench conference, the Circuit Court again advised the jury that it was striking Mitchell's answer and instructed the jury to disregard it.

As Mitchell continued his testimony, the DPA asked if someone talked to him after he left the scene of the incident. Mitchell responded, "Yeah, an officer at the hospital." Kawaa objected and moved to strike the answer. The Circuit Court struck the answer and instructed the jury to disregard it. Kawaa then asked to "renew [his] other motion," presumably a reference to his motion for mistrial, but the Circuit Court did not respond to this request.

The DPA subsequently showed Mitchell a picture marked as State's Exhibit 8 and asked, "Is the person who shot you depicted in this picture?" Mitchell answered, "Yes." The following then ensued:

> [DPA:] And where? Where is that on Exhibit 8?
>
> [KAWAA'S COUNSEL]: Objection, Your Honor. I move to --
> May we approach, Your Honor?
>
> (A bench conference was had on the record as follows:)
>
> [KAWAA'S COUNSEL]: The question was, Is the person who shot you in that picture?
>
> [DPA]: I'll withdraw the question. He didn't answer.
>
> THE COURT: He said "yes." Then you asked, Where? Where on Exhibit 8?
> I hate to try this case again.
>
> [KAWAA'S COUNSEL]: It's all right. I'll make a motion for dismissal.
>
> [DPA]: Your Honor, the point of the questioning was to have him -- have the jury view who he's already identified on the -- as he appeared on that night, and that's where I was going with that.

4

THE COURT: I'm sorry. Say that again.

[DPA]: The point -- the purpose of the question was to have -- have the witness view persons on exhibits that -- as they viewed on that night.

[KAWAA'S COUNSEL]: Well, Your Honor --

THE COURT: Well, it's -- the question shouldn't have been the person who shot.

[DPA]: Yeah, I realize the -- I was instructed to lead to --

THE COURT: Not to say the person who shot you.
Okay. I don't see how I cannot grant the motion. I mean, would the jury consider that maybe Mr. Kawaa actually did shoot this man? It's not part of the case. Is that sufficiently prejudicial to his rights to be tried in felony possession and place to keep? If the jury considered that, I think it would be. It's a bad act. And it's uncharged. And I've already ruled that I think there's substantial prejudice to that that outweighs any probative value, especially since it's unclear exactly how that bullet got into this man's leg. It could have been just a ricochet or he could have shot him directly. But -- and that becomes a little mini trial in and of itself.

. . . .

THE COURT: I'm going to grant the motion. We're done.[2/]

After the bench conference was concluded, the Circuit Court advised the jury that it had declared a mistrial and excused the jury.

III.

The Circuit Court set the case for retrial. Kawaa then filed a motion to dismiss the charges with prejudice. Kawaa asserted that while the Circuit Court found that the DPA's violation of the motion in limine was unintentional and the result of inexperience, that did not excuse the violation.[3/]

---

[2/] Although the motion made by Kawaa's counsel when he asked to approach the bench was not specifically described as a motion for mistrial, Kawaa, in both his post-trial motion to dismiss and in his opening brief on appeal, identifies the motion that he made and that was granted by the Circuit Court as a motion for a mistrial. We adopt this characterization in addressing his appeal.

[3/] We note that although Kawaa stated in his motion to dismiss that "[t]he court made a finding that the prosecutor's error was not intentional but the result of inexperience[,]" our review of the transcript of the Circuit Court's mistrial ruling does not reveal such a finding. The transcript
(continued...)

Citing State v. Rogan, 91 Hawai'i 405, 984 P.2d 1231 (1999), Kawaa argued that the DPA had engaged in egregious misconduct which barred retrial under the Double Jeopardy Clause of the Hawai'i Constitution, Article I, Section 10.

The State opposed the motion. The State asserted that the DPA's error was unintentional and that the DPA meant to ask, "Is the person who was shooting depicted in this picture?" but instead, the question came out, "Is the person who shot you depicted in this picture?" While acknowledging that the DPA's question was improper, the State argued that the DPA's error was not so egregious that a retrial was barred by double jeopardy.

At a hearing held on Kawaa's motion to dismiss, the Circuit Court stated that after reviewing the motion, the State's response, and the case law, it did not believe the law supported Kawaa's position. The Circuit Court subsequently filed its written Order Denying Dismissal on June 25, 2014, and this appeal followed.

DISCUSSION

On appeal, Kawaa argues that the Circuit Court erred in denying his motion to dismiss the case with prejudice. Relying on Rogan, Kawaa contends that the DPA's misconduct was so egregious that his retrial was barred by double jeopardy principles. We disagree.

I.

A.

In Rogan, the Hawai'i Supreme Court held that "reprosecution of a defendant after a mistrial or reversal on appeal as a result of prosecutorial misconduct is barred where the prosecutorial misconduct is so egregious that, from an objective standpoint, it clearly denied a defendant his or her right to a fair trial." Rogan, 91 Hawai'i at 423, 984 P.2d at 1249. The supreme court "limited application of this rule,

_____

3/(...continued)
indicates that a discussion was held off the record after the Circuit Court declared a mistrial and excused the jury, but that discussion was not transcribed.

however, to only the most 'exceptional circumstances' of egregious prosecutorial misconduct." State v. Pacheco, 96 Hawai'i 83, 98, 26 P.3d 572, 587 (2001) (citing Rogan, 91 Hawai'i at 423 n.11, 984 P.2d at 1249 n.11).

The prosecutor in Rogan appealed to racial prejudice by asserting in his closing argument that it was "every mother's nightmare [to find] . . . some black, military guy on top of your daughter." Rogan 91 Hawai'i at 412, 424, 984 P.2d at 1238, 1250. The supreme court noted that "arguments by the prosecution contrived to stimulate racial prejudice represent a brazen attempt to subvert a criminal defendant's right to trial by an impartial jury[.]" Id. at 414, 984 P.2d at 1240. It further concluded that the prosecutor's closing argument statement in Rogan was "a particularly egregious form of prosecutorial misconduct." Id. at 424, 984 P.2d at 1250. Because "racial fairness of the trial is an indispensable ingredient of due process and racial equality a hallmark of justice," the supreme court held that "the egregiousness of the deputy prosecutor's remark rose to such a level" that Rogan's reprosecution was barred by the double jeopardy clause of the Hawai'i Constitution. Id. (internal quotation marks, citation, and brackets omitted).

B.

In Pacheco, the Hawai'i Supreme Court, applying the double jeopardy rule it announced in Rogan, held that the prosecutor's misconduct did not rise to the level of egregiousness necessary to bar retrial. In Pacheco, the supreme court held that the prosecutor had engaged in two separate types of misconduct, each of which independently necessitated the overturning of Pacheco's convictions. First, the prosecutor engaged in harmful misconduct by repeatedly referring to Pacheco as an "asshole," which strongly conveyed the prosecutor's personal opinion to the jury in a manner calculated to inflame the jury. Pacheco, 96 Hawai'i at 95, 26 P.3d at 584. Second, the prosecutor engaged in harmful misconduct by wilfully violating the trial court's in limine ruling by asserting that

7

the jury should not believe Pacheco because he was a convicted thief, during the prosecutor's cross-examination of Pacheco and in the prosecutor's closing argument. Id. at 97-98, 26 P.3d at 586-87.

Although the supreme court concluded that the prosecutor's misconduct required vacating Pacheco's second-degree escape conviction, it further concluded that such misconduct did not rise to the level of "the most exceptional circumstances of egregious prosecutorial misconduct" necessary to bar retrial under double jeopardy principles. Id. at 98, 26 P.3d at 587 (internal quotation marks and citation omitted). The supreme court held:

> As deplorable as we regard the [prosecutor's] flagrant defiance of the circuit court's in limine ruling and personal and vulgar denigration of the defendant, we do not believe that the [prosecutor's] misconduct rose to such a level as to be comparable to the misconduct present in Rogan, in which the prosecutor infected the defendant's trial with an overt appeal to racial prejudice. Simply said, the circumstances present here are not the sort of "exceptional circumstances" that, under Rogan, preclude reprosecution after a defendant's conviction has been vacated on appeal due to prosecutorial misconduct. Accordingly, reprosecution of Pacheco for the offense of escape in the second degree is not barred by principles of double jeopardy.

Id.

II.

Kawaa relies on the DPA's apparent violation of the Circuit Court's in limine ruling to support his claim that the DPA's misconduct was so egregious that Kawaa's retrial should be barred by double jeopardy.[4/] We certainly do not condone a prosecutor's violation of a trial court's in limine ruling, regardless of whether it was an unintended mistake or not. However, as in Pacheco, "we do not believe that the [prosecutor's] misconduct rose to such a level as to be

_____

[4/] As noted, while the available record indicates that the Circuit Court granted Kawaa's oral motion in limine to exclude evidence that Mitchell had been shot by Kawaa, Kawaa did not make the transcript of the Circuit Court's actual ruling and the discussion leading up to the ruling part of the record on appeal.

8

comparable to the misconduct present in Rogan," and we conclude that the "circumstances present here are not the sort of 'exceptional circumstances' that, under Rogan, preclude [retrial]. . . ." See Pacheco, 96 Hawai'i at 98, 26 P.3d at 587; see also State v. Espiritu, 117 Hawai'i 127, 144, 176 P.3d 885, 902 (2008) (holding that the prosecutor's misstatement of the law during closing argument was not sufficiently egregious from an objective standpoint to bar retrial); State v. Shabazz, 98 Hawai'i 358, 377, 382-83, 48 P.3d 605, 624, 629-30 (App. 2002) (holding that the prosecutor's references to race without a legitimate purpose was misconduct, but was not so egregious as to bar reprosecution).[5/]

Kawaa also contends that the DPA engaged in other misconduct, which the Circuit Court did not rely upon in declaring a mistrial, that supports barring his retrial. For example, Kawaa contends that because Mitchell only told the police that Kawaa "resembles" the person he saw holding or shooting the gun when Mitchell selected Kawaa's picture from the photographic lineup, the DPA engaged in misconduct by asking Mitchell at trial whether he had "recongize[d] anybody" when he was shown the photographic lineup.[6/] We disagree. Mitchell informed the police that he could identify the person he saw shooting the gun if he saw that person again. He also told the police that Kawaa's photograph in the photographic lineup resembled the person he saw shooting the gun. Given these circumstances, we conclude that the DPA did not engage in misconduct in asking Mitchell at trial if he had recognized

---

[5/] The only question asked by the DPA that violated the Circuit Court's apparent in limine ruling was the question "Is the person who shot you depicted in this picture?" While Mitchell may have provided answers to prior questions asked by the DPA that violated the Circuit Court's in limine ruling, the prior questions asked by the DPA do not indicate an attempt by the DPA to elicit answers that would violate the in limine ruling.

[6/] Mitchell, without objection, had previously identified Kawaa in court as the person he saw shooting the gun. In response to the DPA's question about whether Mitchell had recognized anybody in the photographic lineup, Mitchell said "Yes" and then proceeded to identify Kawaa as the person he recognized in the photographic lineup.

anybody in the photographic lineup. Kawaa was free to explore any alleged inconsistency between Mitchell's pre-trial statements and his trial testimony during Kawaa's cross-examination of Mitchell.

Kawaa's suggestion that the State brought the felon in possession of a firearm and place to keep pistol or revolver charges against him in bad faith because it lacked sufficient evidence to charge him with more serious first-degree assault or attempted murder offenses is without merit. The evidence of the police investigation contained in the record shows that the State had sufficient evidence to prosecute Kawaa on the felon in possession and place to keep charges. The State's failure to pursue additional charges does not demonstrate that it acted in bad faith in pursuing the charges it chose to prosecute.

CONCLUSION

Based on the foregoing, we affirm the Order Denying Dismissal.

DATED: Honolulu, Hawai'i, April 28, 2017.

On the briefs:

Walter R. Schoettle
for Defendant-Appellant.

Brian R. Vincent
Deputy Prosecuting Attorney
City and County of Honolulu
for Plaintiff-Appellee.

*Craig H. Nakamura*

Chief Judge

*Lawrence M. Reifurth*

Associate Judge

*Tim Wu Hsing*

Associate Judge

10